UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

      Plaintiff,

v.

03-Norman L. Simms,

      Defendants.

Criminal No. 08-343 (JNE/FLN)

**ORDER AND
REPORT AND
RECOMMENDATION**

_____

Thomas M. Hollenhorst, Assistant United States Attorney, for the Government.
James E. Ostgard II, for Defendant Norman Lynel Simms.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on December 10, 2008 on Defendant's Motion for Suppression of Confessions or Statements [#75], Defendant's Motion for Disclosure of Informants [#76], and Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#78]. At the hearing, the Court received testimony from Officer David Garman, Sargent Randall Olson, Sargent Jeffrey Jindra, and Officer Mike Nimlos. The Government submitted one exhibit, the search warrant for a residence on 27th Avenue in Minneapolis. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's Motion for Disclosure of Informants [#76], and Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#78] be **DENIED** and Defendant's Motion for Suppression of Confessions or Statements [#75] be **DENIED as MOOT**.

## I.   FINDINGS OF FACT

### A.   The Warrant.

The testimony heard by the Court concerned the execution of a search warrant at a townhome on 27th Avenue in Minneapolis.  The search warrant stated that a confidential reliable informant ("CRI") told the affiant, Officer Lucas Peterson, that narcotics were being sold and stored at a 27th Avenue residence.  The CRI told Peterson that an individual who goes by the street name "CD" had arrived from Chicago within the last 72 hours with a large amount of cocaine.  The CRI told Peterson that he had been present at the townhome when "CD" stored the cocaine in an upstairs bedroom and when customers came to the residence and "CD" sold them small amounts of cocaine. Officer Peterson stated that he conducted surveillance of the residence with the CRI and observed a male smoking a cigarette outside the residence whom the CRI identified as "CD."  During surveillance, Peterson and the CRI also observed a Chevrolet Lumina arrive at the townhome.  A lone female whom the CRI identified as Shemika Williams, exited the vehicle, and went inside with "CD."  The CRI told Peterson that Shemika Williams was the girlfriend of "CD."  Officer Peterson stated that further investigation revealed that Shemika Williams was listed as the individual renting the townhome.  The search warrant allowed law enforcement officers to search the townhome for drugs and related items.

### B.   Testimony of Officer Dave Garman.

Officer Garman testified that he has been a police officer with the City of Minneapolis for twelve years.  He is currently an investigator with the metro gang strike force.

On October 22, 2008, he was assigned to assist Officer Peterson in the execution of the search warrant described above.  Officer Garman's assignment was to conduct surveillance in the

front of the house prior to the execution of the warrant.  Officer Garman testified that he conducted

surveillance from his car and was located in two different places during the course of the

assignment.  To begin, he was parked north of the house on 27th Street less than one block away.

He later moved to a second location kitty-corner from the house because he could no longer park

in the first location.  He testified that he arrived around noon to begin observation and that it was

raining.  He testified that the informant was not present with him in the car.  He testified that

between noon and 1:30 p.m.,  he observed through binoculars Defendant Shemika Williams exit the

residence at least twice and approach two different cars that had pulled up in front of the house.  He

testified that he did not observe drugs changing hands between Shemika Williams and the occupants

of the cars but believed he saw currency being passed from one of the cars to Shemika Williams.

He testified that in his training and experience he had witnessed and participated in hundreds of

hand-to-hand drug sales and that he believed that Shemika Williams was engaging in hand-to-hand

transactions.  At the hearing, Officer Garman positively identified Defendant Shemika Williams as

the person he observed serving cars.  He testified that he had not met Shemika Williams before that

day but he had been given a description of her by Officer Peterson.  At the times he observed

Shemika Williams serve the cars, he was the only person conducting surveillance and no officers

apprehended the vehicles and no evidence was found substantiating his suspicion that Ms. Williams

was engaging in drug transactions.

Officer Garman also testified that he observed a Chevy Blazer pull up to the house and the

two occupants exit the vehicle and enter the house.  He also testified that around 1:30 p.m. he

observed two individuals pull up in maroon Buick.  Officer Garman radioed the car's license plate

to the other officers working on the case.

Officer Garman later assisted in the search of the dwelling. He testified that he was assigned to search the east second floor bedroom and that he did not find any contraband.

C.    **Testimony of Sargent Randall Olson.**

Sargent Olson has been a police officer with the City of Minneapolis since 1991 and is currently working in the gang strike force unit. On October 22, 2008, he was contacted by Officer Peterson to help execute the warrant at the 27th Avenue residence. He testified that Officer Garman was the "main eye" conducting surveillance and was communicating what he saw over the radio. Officer Garman radioed that he was observing heavy foot and vehicle traffic at the house. When Officer Garman radioed that a maroon Buick had pulled up to the house and that the occupants had entered and exited the house within five minutes, Sargent Olson testified that he, along with Officer Peterson in a separate car, followed the vehicle as it left the house. A few blocks away from the house, Officer Peterson activated the lights on his unmarked vehicle. At that point, it was raining heavily and the Buick was stuck in gridlock traffic. Sargent Olson pulled his unmarked squad alongside the Buick and Officer Peterson activated his lights behind the Buick in his unmarked squad. This configuration prevented the Buick from moving any great distance because there was stopped traffic in front of it. For a few seconds, Defendant Alexander, who was driving the Buick, attempted to maneuver the vehicle away from Sargent Olson and Officer Peterson by moving the car backwards and forwards a few feet. Sargent Olson testified that when he observed this, he exited his squad, drew his gun and stood in front of the Buick. At that point, Alexander gave up and stopped moving the car. Sargent Olson proceeded to approach the passenger side of the Buick while Officer Peterson approached the driver's side. Sargent Olson asked Defendant Simms, who was seated in the passenger seat, to step out of the vehicle and Simms did so. At that point, Sargent

4

Olson patted Simms down for weapons and felt a bulge in Simms' sock.  The bulge was a ball of crack cocaine about three fourths the size of a fist, weighing 63 grams.  Officer Peterson also found drugs on Alexander.  Sargent Olson testified that he knew the search warrant had been signed about 15 minutes before he made the traffic stop because an officer had announced over the nextel radios that it had been signed.

Sargent Olson testified that after he found the drugs, he brought Simms back to the townhouse on 27th Avenue where other officers were executing the search warrant.  He testified that when he returned to the townhome, he observed crack cocaine in the townhouse.  He also observed that there were two women present, Defendant Shemika Williams and another woman, in addition to a small child.  He testified that he did not know Shemika Williams prior to the execution of the warrant.  The officers detained between 6 and 7 people, including Alexander and Simms.  After the officers completed executing the warrant, they secured the house and returned the key to management.  Sargent Olson testified that the search warrant return from the search of the house incorrectly listed the items seized from Defendant Simms when he and Defendant Alexander were pulled over in the maroon Buick.  He testified that the items listed as number seven in the return were not recovered from inside the residence but rather at the traffic stop a few blocks from the residence.

Sargent Olson testified that after the key had been returned to management, an Officer Sidell could not find his keys and so he and Sargent Olson returned to the townhouse, obtained a key from management and looked for the officer's keys for about 15 minutes.  During the search, they recovered cocaine under a keyboard in the southwest bedroom of the second floor.

Sargent Olson also testified that a black Blazer that was observed leaving the house was

pulled over by an officer and no drugs were recovered from the vehicle.

### D.      Testimony of Sargent Jeffrey Jindra.

Sargent Jindra has been an officer with the Minneapolis Police Department for 13 years.  He testified that he was notified of the investigation by Officer Peterson and that he was the supervisor upon entry into the townhouse.  He testified that Officer Nimlos obtained a key to the townhouse from the management office and that Officer Nimlos had the warrant in hand when he took possession of the key.  He testified that when they entered the townhouse, he observed two women, Shemika Williams and another woman, a small child, and a number of men.  He testified that the unidentified woman was not arrested.

### E.      Testimony of Officer Mike Nimlos.

Officer Nimlos testified that he was in charge of obtaining the key to the townhouse so law enforcement could smoothly execute the warrant.  He testified that before he had the warrant, he went to the management office and explained that he was waiting for a warrant and that he would need the key to the townhouse once it was issued.  He testified that the key was placed on the management desk and the office staff told him that he could take the key when he needed it.  When the warrant was issued, Officer Nimlos returned to the management office and obtained the key.

## II.  CONCLUSIONS OF LAW

### A.      Defendant's Motion for Suppression of Confessions or Statements [#75] is Moot.

Based on the representations of the parties at the hearing, the Court determined that this motion was moot.

### B.      Defendant's Motion for Disclosure of Informants [#76] Must be Denied.

Defendant moved for disclosure of the informant used in this case.  A defendant has the right

to know the identity of an informant if it is "material" to his defense. *See Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)  In *Roviaro*, the defendant was charged with selling and transporting heroin.  *Id*. at 55.  The only witness to these alleged acts other than law enforcement officials was an informant.  *Id*. at 64.  Before trial, the trial court denied defendant's request for disclosure of the informant's identity and defendant was found guilty.  *Id*. at 55.  On appeal to the United States Supreme Court, the Court found that the defendant was entitled to learn the identity of an informant because the informant was the only material witness to the crime other than law enforcement officers.  *Id*. at 64.  The informant was the "only witness in a position to amplify or contradict the testimony of government witnesses." *Id*.

The defendant bears the burden of demonstrating the need for disclosure of an informant's identity. *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991).  In this case, the Defendant contends that the informant's identity must be disclosed if the informant was a witness to events that the government will prove at trial.  However, the Government represented at the hearing that it will not call the informant as a witness and will not offer any evidence at trial to which the informant was a witness.  The Government rather represented that it intends to prove facts observed on the scene by police officers, facts to which the informant was not a witness.  Based on the Government's representations, the Defendant has not met his burden of showing that the informant's identity is material to his defense.

### C.   Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#78] Must be Denied.

The Defendant contends that the evidence obtained during the traffic stop must be suppressed because the officers made a full arrest without probable cause.  In the alternative, Defendant argues that, assuming the officers executed a *Terry* stop, the stop was not supported by a reasonable

articulable suspicion and therefore the evidence must be suppressed.  Finally, the Defendant argues that the stop was not justified under *Michigan v. Summers*, 452 U.S. 692 (1981), a case holding that occupants of searched premises may be temporarily detained.  Because the Court concludes that the officers made a legal *Terry* stop, it does not address the remaining arguments.

"An investigatory stop is considered a seizure within the meaning of the Fourth Amendment and must be 'supported by reasonable suspicion to believe that criminal activity is afoot.'"  *United States v. Ameling*, 328 F.3d 443, 447 (8th Cir.2003)(quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).  "An investigative stop of a vehicle does not violate the Fourth Amendment where the police have a reasonable suspicion that the occupant of the vehicle is engaged in criminal activity."  *United States v. Jacobsen*, 391 F.3d 904, 906 (8th Cir.2004); *see also Florida v. J.L.*, 529 U.S. 266, 271 (2000) ("[t]he reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.")  "Whether the particular facts known to the officer amount to an objective and particularized bases for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances."  *United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir.1994).

Reasonable suspicion is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, [however,] the Fourth Amendment requires at least a minimal level of objective justification for making the stop."  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).  In order to establish reasonable suspicion, an "officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity."  *Wardlow*, 528 U.S. at 123-24 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).  To establish reasonable suspicion "an officer may rely on

information provided by other officers and all the information known to a team of officers involved in the investigation to provide justification for a stop." *United States v. Ortiz-Monroy*, 332 F.3d 525, 529 (8th Cir.2003).

Given the totality of the circumstances, Sargent Olson and Officer Peterson were justified in making a *Terry* stop in this case. The officers had information supported by a search warrant that an individual who went by the street name "CD" had just returned from Chicago with a large quantity of cocaine and that he had stored the cocaine at the townhouse on 27th Street. Officer Peterson had conducted surveillance of the house and, with the help of a CRI, had observed "CD" smoking a cigarette outside the townhouse. The CRI had also told law enforcement officers that the CRI was present when "CD" stored the cocaine in the townhouse and had been present when "CD" had sold small quantities of cocaine to people who came to the townhouse. Beginning around noon on October 22, 2008, Officer Garman radioed to other officers that he was observing a high volume of foot traffic in and out of the townhouse. He also radioed to other officers that he observed Shemika Williams, on two occasions, exit the house and "serve" two cars that pulled up to the townhouse. Officer Garman also radioed that a maroon Buick had pulled up to the townhouse and the two passengers entered the house and exited less than five minutes later. Officer Peterson and Sargent Olson followed the car as it left the townhouse. When they activated their lights to pull over the car, the driver attempted to maneuver the car away from them by moving the car forward and backward a couple of feet. Given the totality of the circumstances, the officers had a reasonable, articulable suspicion and the passengers were engaged in criminal activity. During the execution of the "Terry stop", the officers found evidence that ripened into probable cause to arrest Defendant Simms. The Defendant's motion must be denied.

## III.  RECOMMENDATION AND ORDER

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#78] be **DENIED** and Defendant's Motion for Suppression of Confessions or Statements [#75] be **DENIED as MOOT**.

**IT IS HEREBY ORDERED** that Defendant's Motion for Disclosure of Informants [#76] is **DENIED.**


DATED: January 8, 2009                          *s/ Franklin L. Noel*
                                                FRANKLIN L. NOEL
                                                United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **January 28, 2009**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **January 28, 2009,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.